UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:14-CR-00053-TBR

UNITED STATES OF AMERICA                                                                           Plaintiff,

v.

GREGORY BEN                                                                                          Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the motion to suppress of Defendant Gregory Ben, (Docket No. 17), to which the Government has responded, (Docket No. 22). On April 27, 2015, the Court held a suppression hearing in Louisville, Kentucky, with Thomas W. Dyke appearing for the Government and Patrick J. Bouldin appearing on behalf of Ben. Official Court Reporter Alan Wernecke transcribed the proceedings. The matter stands ripe for adjudication. For the following reasons, Ben's motion to suppress, (Docket No. 17), is DENIED.

### Factual Background

On October 14, 2013, Detective Steven Presley of the Jeffersontown Police Department executed an affidavit concerning a residence at 4329 Pruitt Court, Louisville, Kentucky. According to the affidavit, a confidential informant advised that Ben frequently sold heroin from the residence, where he also stored heroin, packaging materials, firearms, and large amounts of money. Citing safety concerns, the confidential informant wished to remain anonymous. The affidavit does not reveal his or her name.

After research of Ben's criminal history revealed several drug-related charges, Presley conducted surveillance of the Pruitt Court residence. He observed activity consistent with drug trafficking, including hand-to-hand transactions between Ben and various individuals. A Jefferson County District Court judge

approved Presley's application for a warrant to search the Pruitt Court residence, a beige 2007 Chevrolet Malibu, and Ben himself.

Upon issuance of the warrant, officers observed Ben leave the home. They conducted a traffic stop, detained him, and searched the residence, which yielded quantities of heroin, a firearm, and ammunition. Officers detained Ben for the duration of the search, and Ben made incriminating statements describing his trafficking activities. He now moves to suppress the physical and testimonial evidence that resulted from the search.

## Analysis

**I.     The affidavit supporting the search warrant adequately establishes probable cause.**

Ben first asserts that the search was grounded upon an insufficient affidavit, rendering it constitutionally deficient. In evaluating an affidavit's sufficiency, the Court must determine "whether the magistrate judge had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). Probable cause requires "'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). That is, the affidavit must suggest "reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of property is suspected of crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quotations omitted). In making this inquiry, "[t]he issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inference about where evidence is likely to be kept." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (quotations omitted).

Affidavits are commonly drafted by "nonlawyers in the haste of a criminal investigation"; as such, the Supreme Court has recognized that "technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Gates*, 462 U.S. at 235.  Rather, "the affidavit should be reviewed in a commonsense rather than a hypertechnical manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause rather than engaging in line-by-line scrutiny."  *Woolsey*, 361 F.3d at 926.  The district court tasked with this determination must afford d "great deference" to the reviewing judge's probable cause determination, reversing it "only if the magistrate arbitrarily exercised his discretion." *Id.*

Although Ben argues that the affidavit does not survive substantial basis review, the Court cannot agree.  An affidavit's sufficiency is determined based on its actual contents, not what it allegedly lacks. *Id.* at 924 (citing *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc)).  Under this forgiving standard, an affidavit remains constitutionally sound so long as it includes "sufficient corroboration that the [magistrate] could determine, under the totality of the circumstances, that probable cause existed." *Id.* at 927.  The Sixth Circuit has held that a confidential informant's information need not always be independently corroborated by police, nor must the affidavit always establish an informant's expertise in identifying the particularities of the alleged criminal activity.  *Allen*, 211 F.3d  at 270.  Moreover, an affidavit that relies on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." *Gates*, 462 U.S. at 242 (quoting *Jones v. United States*, 362 U.S. 257, 269 (1967)).

Here, Detective Presley informed the Jefferson County judge of the confidential informant's observations, which he then corroborated with his own independent investigation.   Presley averred that during his surveillance, he witnessed Ben conduct hand-to-hand transactions consistent with narcotics trafficking, driving the car indicated in the search warrant, and coming and going from the residence listed.  Considered together, the confidential informant's allegations and Presley's own observations

constitute probable cause. Accordingly, the Court finds that the affidavit afforded the reviewing judge with a substantial basis for concluding that probable cause existed under the totality of the circumstances.

Moreover, any hesitation that the Court may have regarding the existence of probable cause is resolve by the Government's reliance upon the good-faith exception. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court explained that when an officer had an objectively reasonable reliance on a warrant later found to be lacking in probable cause, the evidence will not be excluded. *Id.* at 922. This exception results from common-sense principles, as suppression of evidence is intended to safeguard Fourth Amendment rights by deterring Fourth Amendment violations. *See id.* at 906. An officer who conducts a search in reasonable reliance upon a warrant later found to be invalid, though, has committed no wrong to be deterred. *See id.* at 919. Because no deterrence is needed, the Court need not suppress evidence arising from a search conducted in good faith. *See id.* at 918-21.

*Leon* identified four situations in which an officer's reliance on a subsequently invalidated search warrant *could not* be considered objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *Id.* at 914-23. The *Leon* bar is not a particularly high one: the Sixth Circuit has applied the good-faith exception in cases with an affidavit containing "a minimally sufficient nexus between the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008) (quotations omitted).

In the instant case, law enforcement officers acted in reasonable reliance upon the reviewing judge's finding of probable cause to search the residence and the vehicle. Even if the facts provided in the affidavit had inadequately demonstrated probable cause, they were not so vague as to be conclusory or

meaningless. The affidavit was not utterly lacking in facts connecting the residence to the criminal activity; to the contrary, the confidential informant explicitly stated that he or she had observed drug paraphernalia in the home and had witnessed numerous narcotics transactions there. These facts are sufficient to establish the minimal nexus required by the good faith exception.

      II.      **The information within the affidavit was not stale at the time of the search.**

Ben next argues that the information provided in the affidavit may have grown stale by the time of the search. Although the affidavit states that the confidential informant disclosed the information within forty-eight hours of the affidavit's execution, there is no indication of when the informant allegedly witnessed the events at issue. Accordingly, Ben argues that any probable cause may have dissolved during this indefinite period.

Because the probable cause analysis turns upon facts regarding a presently existing condition, the passage of time may cause once-existing probable cause to turn stale. Stale information cannot be used in a probable cause determination. *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citing W. LaFave, *Search and Seizure* § 3.7 (3d ed. 1996)). Although "the length of time between events listed in the affidavit and the application for the search warrant . . . is clearly salient, [it] is not controlling." *Id.* It follows, then, that the search warrant does not yield an "'arbitrary time limitation within which discovered facts must be presented to a magistrate.'" *Id.* (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). The court's analysis require more than simply calculating the passage of days. Rather, the staleness inquiry hinges upon the "inherent nature of the crime." *Id.* (quoting *united States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). The Court considers the following factors:

> (1) The character of the crime (chance encounter in the night or regenerating conspiracy?),
> (2) The criminal (nomadic or entrenched?),
> (3) The thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and
> (4) The place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006) (citations omitted). These variables reflect that although a significant period of time may have elapsed since a defendant's last reported criminal activity, the reviewing judge may nonetheless infer that evidence of wrongdoing may remain on the premises.

Applying these factors to this case, the Court concludes that the information presented to the reviewing judge had not grown stale. The events outlined in the affidavit reveal that the information observed by the informant were unlikely isolated events. Rather, the informant indicated that he or she "frequently" witnessed narcotic trafficking, firearms, and large amounts of currency in the residence. (*See* Docket No. 17-1.) This statement, along with Presley's own observations, suggest that the residence may have been an operational base for illegal drug trafficking. Moreover, these items were of lasting value and were not so transient as to be quickly discarded. Consequently, it is reasonable to conclude that evidence of illicit activities would remain at the residence for some period after the events recounted by the informant. These factors support the continued existence of probable cause. Therefore, under these circumstances, the delay in the issuance and execution of the search warrant does not render the information contained in the affidavit stale, nor does it invalidate the search warrant.

**III.     Law enforcement did not violate the obligations imposed by *Miranda*.**

Finally, Ben argues that the Court must suppress his statement to police because his waiver of rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), was not knowing, voluntary, and intelligent. *Miranda* requires that a suspect held in police custody must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning should he so desire. *Id.*

Although a suspect may waive his *Miranda* rights, the government has the burden of demonstrating that such waiver was knowingly and voluntarily made. *Id.* at 475. A valid waiver of

*Miranda* rights must satisfy two requirements: first, the suspect must relinquish the right voluntarily—that is, as a result of free and deliberate choice made without intimidation, coercion, or deception—and second, the waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. A court may properly conclude that a suspect waived his *Miranda* rights only if the totality of the circumstances surrounding the interrogation reflect both an uncoerced choice and the requisite level of comprehension. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The Supreme Court has held that coercive police activity is a "necessary predicate" to a finding that a suspect involuntarily waived his *Miranda* rights before confessing. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

There is no evidence that law enforcement personnel were coercive or that Ben's waiver of his rights was anything but a free and deliberate choice. Moreover, the record reflects that Ben waived his rights voluntarily. At the hearing on the instant motion, Presley testified that before taking Ben's statement, he advised Ben of his *Miranda* rights, which Ben appeared to understand. No evidence suggests that Ben was impaired in any manner, nor did he attempt to stop the interview or to request an attorney. Accordingly, the Court finds that the Government has satisfied its burden to demonstrate that Ben's statement was voluntary and knowing.

## Conclusion and Order

Based on the totality of the circumstances, the Court concludes that the affidavit in support of the search warrant provided the Jefferson County District Judge a substantial basis to believe there was a fair probability that contraband or evidence of a crime would be found at the Pruitt Court address. The Court therefore finds no violation of the Fourth Amendment on grounds that the search warrant was issued without probable cause. Moreover, even assuming the search warrant was defective, it appears that the officers executing the warrant acted in good faith reliance on its validity. Therefore, because none of the *Leon* exceptions apply, suppression is not warranted, even if the search had been made with a defective

warrant. Finally, the Court concludes that Ben knowingly, intelligently, and voluntarily waived his *Miranda* rights before offering incriminating statements to law enforcement personnel.

Accordingly, having considered Ben's motion and being otherwise sufficiently advised, for eth foregoing reasons;

IT IS HEREBY ORDERED that Defendant Gregory Ben's motion to suppress, (Docket No. 17), is DENIED.